IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| LOUISE HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:07cv239-MHT |
| | ) | (WO) |
| RICHARD ALLEN, | ) | |
| Commissioner, Alabama | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION

When petitioner Louise Harris filed a petition for
writ of habeas corpus in this court pursuant to 28 U.S.C.
§ 2254, she immediately moved to stay and hold in
abeyance federal proceedings on that petition.  The court
granted the motion.  Harris's petition is again before
the court, this time on a motion to dissolve the stay so
that her petition can now be heard on the merits.  The
court will grant Harris's motion and dissolve the stay,
but, for the reasons that follow, will also dismiss her
petition without prejudice.

## I. BACKGROUND

In 1989, Harris was convicted of capital murder in a state trial court in Montgomery County, Alabama. Following her conviction, she was sentenced to death by the judge who presided over her trial.[1] On direct appeal, her conviction and sentence were affirmed by the Alabama Court of Criminal Appeals, Harris v. State, 632 So. 2d 503 (Ala. Crim. App. 1992), and the Alabama Supreme Court, Ex parte Harris, 632 So. 2d 543 (Ala. 1993). The United States Supreme Court "granted certiorari to consider [Harris's] argument that Alabama's capital sentencing statute is unconstitutional," Harris v. Alabama, 513 U.S. 504, 505 (1995), but rejected that

_____

1. The jury recommended, by a vote of 7 to 5, that Harris be sentenced to life without the possibility of parole. In Alabama, "[w]hile the jury's recommendation concerning sentence shall be given consideration, it is not binding on the court." 1975 Ala. Code § 13A-5-47.

argument and "affirm[ed] the judgment of the Alabama Supreme Court," id. at 515.[2]

Subsequently, pursuant to Ala. R. Crim. P. 32, Harris sought state post-conviction review of her conviction and sentence. Upon review, the Alabama Court of Criminal Appeals affirmed Harris's conviction again, but found that her "counsel were ineffective at the penalty phase of the trial," reversed her death sentence, and remanded her "cause ... for a new penalty-phase hearing before a jury." Harris v. State, 947 So. 2d 1079, 1132 (Ala. Crim. App. 2004). The Alabama Supreme Court denied the State's petition for certiorari on the issue of Harris's sentence reversal, Pet., Ex. C (Doc. No. 1-4), but, on the same day, granted certiorari to consider several challenges to her conviction, Pet., Ex. D (Doc. No. 1-5). The court affirmed Harris's conviction on May 12, 2006,

---

2.   Harris argued that "Alabama's capital sentencing statute is unconstitutional because it does not specify the weight the judge must give to the jury's recommendation and thus permits arbitrary imposition of the death penalty." Harris, 513 U.S. at 505.

<u>Ex parte Harris</u>, 947 So. 2d 1139 (Ala. 2006), and overruled her application for rehearing on July 21, 2006, Pet., Ex. F (Doc. No. 1-7).

Less than a year later, on March 16, 2007, Harris filed a habeas petition in this court, raising constitutional challenges to her conviction.  As noted above, her petition was accompanied by a motion for stay and abeyance of federal proceedings.  Specifically, she requested that proceedings "be held in abeyance pending her resentencing hearing and a state court resolution of the penalty phase claims that may arise from that proceeding."  Mot. for Stay at 2 (Doc. No. 7).  After considering her request and receiving no objection from respondent Richard Allen, the court granted the motion.

Although nearly three years have passed since Harris filed her habeas petition in this court, the Alabama trial court has not held, or even scheduled, a re-sentencing hearing.  The trial court held a status conference on December 13, 2007, but "decided that it

4

needed to reschedule the conference to have Ms. Harris present (although she had waived her right to be present at the status conference)." Pet'r Memo at 2 (Doc. No. 15). The conference has yet to be rescheduled. Moreover, on October 31, 2008, the district attorney for Montgomery County moved the trial court to "enter an Order to Stay any further proceedings in State Court until the Federal Court has completely ruled on all of the Defendant's pending Writs and Motions." Mot. to Dissolve Stay, Ex. D at 1 (Doc. 13-5). Although the trial court has not granted the requested stay, Harris has notified that court that she "agree[s] to a stay of the state court proceedings as long as [the federal] Court proceeds to review [her] pending federal habeas petition." Mot. to Dissolve Stay at 3 (Doc. No. 13). In keeping with her notice to the state court, Harris filed the instant motion to dissolve the stay of federal proceedings.

## II. DISCUSSION

As noted above, Harris initially sought to stay federal review of her conviction-related claims until she had been re-sentenced by the state trial court.  The timing of Harris's filing in federal court and her decision to seek a stay pending re-sentencing were driven by then-reasonable concern that provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) might otherwise block review of her existing conviction-related claims and any potential sentence-related claims.  Harris now contends that,

> "In the two years since [she] filed her Petition for Writ of Habeas Corpus and Motion for Stay and Abeyance ... decisions by the United States Supreme Court and the Eleventh Circuit have clarified what constitutes a 'judgment' for purposes of the procedural requirements of [AEDPA], and, thus, what will be considered a 'successive' petition under AEDPA.  In view of these recent decisions, Mrs. Harris now believes that she will not be prejudiced if she moves forward with her innocence claims in federal court before proceeding with her resentencing in state court."

6

Mot. to Dissolve Stay at 3 (Doc. No. 13) (internal citations omitted).  The court concludes, however, that in "clarif[ying] what constitutes a 'judgment' for the purpose of ... AEDPA," these very decisions establish that the court lacks jurisdiction over Harris's petition.

As suggested by the above-quoted excerpt from Harris's motion, the court's analysis of her request requires an examination of the interplay among, and evolving interpretation of, various provisions of AEDPA. In conducting this analysis, the court finds it useful to explain first why Harris finds herself in, as she puts it, "the unusual position of having an involuntarily bifurcated set of habeas claims." Pet'r Memo at 1 (Doc. No. 15).[3]  The court then explains why the necessary

_____

3.  Of course, it is not entirely accurate to say that Harris has a bifurcated set of habeas claims; although she currently challenges only her conviction she could not possibly have sentence-related claims because she has yet to be re-sentenced.  It is certainly accurate, however, to describe her current position as "unusual."

response to this particular "bifurcation" is a dismissal of her petition without prejudice.

Harris's decision to file her petition and motion to stay proceedings was driven by the decision of the Eleventh Circuit Court of Appeals in <u>Rainey v. Sec'y for the Dep't of Corr.</u>, 443 F.3d 1323 (2006).  In that case, the appellate court interpreted and applied AEDPA's statute of limitations, which states, in pertinent part, that,

> "A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

28 U.S.C. § 2244(d)(1)(A).  The court held that "when a [habeas] petitioner who has been resentenced brings an application challenging only his original judgment of conviction, the one-year statute of limitations under the AEDPA runs from the date the original judgment of

8

conviction became final and not the date the resentencing judgment became final." Rainey, 443 F.3d. at 1326.

The Rainey court's interpretation of § 2244(d), when read with other provisions of AEDPA, raised some difficult questions for Harris and similarly situated would-be federal-habeas petitioners.  In addition to establishing a statute of limitations, AEDPA requires petitioners to "exhaust[] the remedies available in the courts of the State" before filing in federal court.  28 U.S.C. § 2254(b)(1)(A).  Because Harris had exhausted state remedies with respect to her "judgment of conviction," the Rainey decision created the possibility that the statute of limitations would bar un-filed federal challenges to her conviction after one year.[4]  On

_____

4.  This was only a possibility, as the Rainey court also held that, "when a petitioner brings a single petition challenging his original judgment of conviction and his resentencing judgment, the statute of limitations under § 2244(d)(1)(A) runs from the date the resentencing judgment became final."  Rainey, 443 F.3d at 1327-28 (emphasis added).  Thus, had Harris waited to exhaust any potential sentence-related claims, Rainey established
(continued...)

the other hand, because she had not been re-sentenced, she could not have exhausted, or even identified, any sentence-related claims and thus could not file them in federal court.   Harris's circumstances were further complicated by the possibility that a later federal petition challenging only her sentence might be treated as a "second or successive" petition and thus dismissed. See 28 U.S.C. § 2244; see also Rose v. Lundy, 455 U.S. 509, 521 (1982) ("[A] prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions.").[5]

_____

    (...continued)
that her petition would be time-barred only if it was filed more than one year after her sentence became final or if it failed to raise any challenges to her new sentence.


    5.  Harris did not explicitly raise these concerns when she filed her motion to stay federal proceedings. Instead, the core of her argument was that a stay would allow her,

        "to revise or supplement the ...
                                (continued...)

10

Faced with the questions raised by the <u>Rainey</u> decision, Harris prudently chose to file her habeas petition and seek a stay and abeyance.  <u>See</u> <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 416 (2005) (suggesting that a petitioner facing similar concerns might "fil[e] a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted").  As stated above, Harris is now confident that subsequent decisions by the United States Supreme Court and the Eleventh Circuit Court of Appeals--including the explicit

---

(...continued)
      petition [following re-sentencing], and
      present all of her claims to this Court
      at the same time.  From the standpoint
      of judicial economy, that is clearly the
      better option."

Pet'r Memo, Mot. to Stay at 4 (Doc. No. 11).  The instant motion to dissolve the stay, however, suggests that Harris was affected by these concerns.  <u>See</u> Mot. at 3 (Doc. No. 13) (contending that the stay should be dissolved because, "[i]n view of these recent decisions, Mrs. Harris <u>now</u> believes that she will not be prejudiced if she moves forward with her innocence claims in federal court before proceeding with her resentencing in state court")(emphasis added).

overruling of <u>Rainey</u>--clear the path for this court to address immediately her conviction-related claims without risking a procedural bar to any later sentence-related claims.

Harris relies in particular on <u>Burton v. Stewart</u>, 549 U.S. 147 (2007) (per curiam), and <u>Ferreira v. Sec'y, Dep't of Corr.</u>, 494 F.3d 1286 (11th Cir. 2007).  In the former, the Supreme Court explained, as it had previously, that: "'Final judgment in a criminal case means sentence.  The sentence is the judgment.'" <u>Burton</u>, 549 U.S. at 156 (quoting <u>Berman v. United States</u>, 302 U.S. 211, 212 (1937)).  Applying this definition of "final judgment" to 28 U.S.C. § 2244(d)(1), the Court concluded that AEDPA's statute of limitations period does "not begin until both [a] conviction <u>and</u> sentence 'become final by the conclusion of direct review or the expiration of the time for seeking such review.'" <u>Burton</u>, 549 U.S. at 156-57 (emphasis in original).

In <u>Ferreira</u>, the Eleventh Circuit addressed a set of facts materially indistinguishable from those it had addressed in <u>Rainey</u>.  <u>See</u> <u>Ferreira</u>, 494 F.3d at 1292 ("The main issue in [this case] is whether the petitioner's original conviction triggered the running of AEDPA's statute of limitations or whether the running of the statute was triggered by the petitioner's resentencing, when the habeas petition only challenges the original ... conviction.").  "Applying the Supreme Court's statutory interpretation in <u>Burton</u>, [the court concluded that] the [AEDPA] statute of limitations is triggered by the date the judgment, which is based on [a petitioner's] conviction and the sentence he is serving, becomes final."  <u>Id</u>. at 1293.  The court went on to explain that: "That interpretation effectively overrules our decision[] in <u>Rainey</u> ... where we defined 'judgment' differently.  Our incorrect interpretation directly led to our holding that [the <u>Rainey</u>] petition[] [was] time-barred."  <u>Id</u>.

Applying the lessons of <u>Burton</u> and <u>Ferreira</u> to Harris's case, this court concludes that she need no longer be concerned that AEDPA's one-year statute of limitations will run on her conviction-related claims before she exhausts state remedies with respect to her sentence; indeed, the clock will not begin to run until such remedies are exhausted.

Nonetheless, Harris urges the court to proceed on her conviction-related claims before she is re-sentenced. The court must refuse her request, as it concludes that it cannot exercise jurisdiction over her petition until there is a state judgment in her case.

Harris filed her habeas petition pursuant to 28 U.S.C. § 2254(a), which states that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court." <u>Burton</u> implies, and <u>Ferreira</u> explicitly states, that "the judgment to which [§ 2254(a)] refers is the underlying conviction and most

14

recent sentence that authorizes the petitioner's current detention." <u>Ferreira</u>, 494 F.3d at 1292. Because Harris's conviction has been reversed and because she is still awaiting re-sentencing, she is not in "custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).

To be sure, at the time Harris filed her petition, she reasonably believed that this court could address her claims because binding Eleventh Circuit precedent established that she was in custody pursuant to a "judgment of conviction." But the Eleventh Circuit has now expressly recognized that what it "previously called the judgment of conviction and the sentencing judgment together form the judgment that imprisons the petitioner." <u>Ferreira</u>, 494 F.3d at 1293.

Harris is correct that, in addition to what has been discussed above, <u>Burton</u> also stands for the proposition that a district court may hear a habeas petitioner's conviction-related claims before her sentence is final

15

under AEDPA's exhaustion requirement and thus before final judgment triggers AEDPA's statute of limitations. Indeed, according to Burton, petitioners with "exhausted and unexhausted claims ... have two options.  They may withdraw [the so-called] mixed petition, exhaust the remaining claims, and return to district court with a fully exhausted petition. ... Alternatively, ... [they] may proceed with only the exhausted claims." Burton, 549 U.S. at 154.  But allowing a petitioner to proceed with some exhausted claims before a judgment is final for purposes of § 2244(d) is not the same as allowing a petitioner to file exhausted claims before she is in "custody pursuant to [a] judgment" as required by § 2254(a).  Burton stands for the former, but cannot be read as endorsing the latter.

The petitioner in Burton filed his initial habeas petition after he was re-sentenced, but before he had exhausted state remedies with respect to his new sentence.  As discussed above, the Supreme Court held

16

that, under § 2244(d), "Burton's limitations period did not begin until both his conviction <u>and</u> sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review'--which occurred well <u>after</u> Burton filed his [initial] petition." <u>Burton</u>, 549 U.S. at 156-57 (emphasis in original). When "Burton argue[d] in rebuttal that this reasoning would necessarily mean the District Court lacked jurisdiction to consider the [initial] petition," the Court rejected his argument. <u>Id</u>. at 157. The Court explained that § 2254(a) grants jurisdiction over "a habeas petition 'in behalf of a person in custody pursuant to the judgment of a State court.'" <u>Id</u>. Because he had been re-sentenced before "he filed [his initial] petition, Burton assuredly was 'in custody pursuant to the judgment of a State court'--even if, at that point, the ... judgment was not final for purposes of triggering AEDPA's statute of limitations." <u>Id</u>. Put simply, Burton was in "custody

pursuant to the judgment of a State court" because he had been convicted <u>and</u> sentenced by the state court.

Harris argues that, like Burton, she "is currently in custody pursuant to a judgment--her 1989 conviction and sentencing." Pet'r Memo at 3 (Doc. No. 15). The court struggles to understand how she could be in custody pursuant to a sentence that no longer exists. Harris is not in custody pursuant to a judgment, she is in custody <u>pending</u> a judgment, just as she was in the interval between her conviction and initial sentence. Harris's conviction without re-sentencing is no more a judgment for federal-habeas purposes than it was a judgment for said purposes prior to her initial sentencing.

The court finds persuasive support in <u>Reber v. Steele</u>, 570 F.3d 1206 (10th Cir. 2009). In that case, "when Mr. Reber filed his § 2254 petition in the federal district court, '[he] had not been sentenced.'" <u>Id</u>. at 1209. Relying upon <u>Burton</u> and <u>Ferreira</u>, the Tenth Circuit Court of Appeals concluded that, "Mr. Reber's 28 U.S.C. § 2254

18

petition was filed prior to the issuance of a final judgment, and thus, the district court lacked jurisdiction to review the petition." Id. at 1210. The appellate court "remanded the case to the district court with instructions to dismiss the petition without prejudice." Id.[6]

In addition to this persuasive support, this court notes that Burton itself, while authorizing petitioners to file exhausted claims before their judgments are final for purposes of § 2244(d), also cautioned against an approach that "would allow prisoners to file separate habeas

---

6. To the extent that Alabama law might also be of persuasive value with respect to this issue, the court notes that Alabama "law is well settled that a judgment is the 'decision or sentence of the law, pronounced by the court.'" Gentry v. State, 51 So. 2d 558, 558 (Ala. 1951); see also Ala. R. Crim. P. 26.1 cmt. ("The Alabama courts do not make a clear distinction between 'judgment' and 'sentence.' Alabama decisions define judgment to mean the decision or sentence of the law, pronounced by the court." (citing Gentry, 51 So. 2d 558)); Ex parte Woods, 371 So. 2d 944, 945-46 (Ala. 1979) ("[T]he entry of sentence marks the termination of legal proceedings against the defendant so that errors allegedly committed during the course of the proceedings may be presented for appellate review.").

19

petitions in the not uncommon situation where a conviction is upheld but a sentence is reversed." Burton, 549 U.S. at 154.  The Burton Court explained that, "Such a result would be inconsistent with ... AEDPA, with its goal of 'streamlining federal habeas proceedings.'" Id.  Harris encourages this court to take a course that could potentially arrive at exactly that result.  Indeed, she argues that "any future habeas petition based on her re-sentencing will necessarily be filed while she is in custody pursuant to a different judgment from the one that she currently contests" and thus will not be subject to AEDPA's strict limits on second or successive petitions. Pet'r Memo at 8 (Doc. No. 15) (emphasis in original).  The court will not read Burton as endorsing a result that is so deeply inconsistent with other language in the opinion.

Even if § 2254(a) authorized federal jurisdiction over Harris's petition, this court is troubled wether exercising jurisdiction in these circumstances would be prudent.  Prior to Burton, the Seventh Circuit Court of

Appeals addressed whether a petitioner's "convictions may be ... considered separately from, and before determination of, the sentence ultimately given by the ... state court." Ben-Yisrayl v. Davis, 114 Fed. Appx. 760, 761 (7th Cir. 2004) (unpublished).[7]  The appellate court determined that, "The Supreme Court decision in Younger v. Harris, [401 U.S. 37 (1971)], answers this question, holding that as a matter of comity, except in extraordinary circumstances, a federal court must abstain from deciding issues implicated in an ongoing criminal proceeding in state court."  Id.[8]  The court further

_____

7.   The facts in Ben Yisrayl appear to be materially indistinguishable from those before this court.  See Ben-Yisrayl, 114 Fed. Appx. at 761 ("[W]hile Ben Yisrayl's appeal was pending before [the Seventh Circuit], ... the Superior Court of Lake County vacated [his] death sentence, but did not set a date for him to be re-sentenced.").

8.   Prior to Burton, the Eleventh Circuit applied the Younger doctrine in concluding that, "Because [a habeas petitioner's] resentencing had not occurred at the time he filed his habeas petition, his state court judgment had not become final, and thus his habeas petition, which
(continued...)

explained that "general principles of federal appellate jurisdiction require that review of state court proceedings await termination by final judgment, and in a criminal case, final judgment does not occur until after conviction and the imposition of sentence." <u>Id</u>. (citations omitted). Although this court need not now rely on this reasoning, it finds both prongs of the Seventh Circuit's analysis compelling.

This is not to say that this court is unsympathetic to Harris's request. Harris "has maintained her innocence

---

(...continued)
challenged all of his convictions and sentences, was not ripe for review at that time." <u>Maharaj v. Sec'y for the Dep't of Corr.</u>, 304 F.3d 1345, 1349 (11th Cir. 2002). It is unclear, however, to what extent the reasoning in that decision rested upon the fact that the petitioner challenged his re-sentencing before it had occurred. <u>See id</u>. at 1347 ("Maharaj challenged his 'convictions and sentences,' and more specifically, 'his convictions and sentence of death,' not just the convictions and non-capital sentences that had become final at the time of filing."); <u>see also</u> <u>Rainey</u>, 443 F.3d at 1327 n.4 (finding the "Appellant's case distinguishable from ... <u>Maharaj</u> ... because, unlike in [that] case[], Appellant's petition contested only his original judgment of conviction and in no way challenged his resentencing judgment").

at all times since she was convicted in 1989, and has
expressed her desire for an expeditious resolution." 
Pet'r Memo at 2 (Doc. No. 15). Also, "during so long a
delay, there is a substantial likelihood that witnesses
will die or disappear, memories will fade, and evidence
will become unavailable. In short, the opportunity for a
fair retrial diminishes as each day passes." Phillips v.
Vasquez, 56 F.3d 1030, 1036 (9th Cir. 1995). However,
although Harris is understandably frustrated with the slow
pace of state-court proceedings, she admits that she has
not turned to either the Alabama Court of Criminal Appeals
or the Alabama Supreme Court for assistance in expediting
her cause. See Oral Arg. Trans. at 13 (Doc. No. 29). In
fact, she has expressed a willingness to "agree to a stay
of the state court proceedings as long as [the federal]
Court proceeds to review Mrs. Harris's pending federal
habeas petition." Mot. to Dissolve Stay at 3 (Doc. No.
13). As this court now finds that it lacks jurisdiction,
it will dismiss her petition without prejudice. Although

this course of action is dictated by congressionally imposed limitations on federal jurisdiction, the court also sincerely hopes that dismissal of the federal petition will encourage the State to re-sentence Harris so that she may, if she wishes, challenge her conviction in a federal forum.

In sum, <u>Burton</u> and <u>Ferreira</u> establish that AEDPA's statute of limitations will not begin to run on Harris's claims until she has exhausted state remedies with respect to her sentence. Upon re-sentencing, Harris may choose to pursue her conviction-related claims in federal court before she exhausts any claims related to her new sentence, <u>see</u> <u>Burton</u>, 549 U.S. at 153-54, but she should be aware that "doing so risks subjecting later petitions that raise new claims [regarding her sentence] to rigorous procedural obstacles," <u>id</u>. at 154. What Harris may not do is file a federal-habeas petition pursuant to § 2254

24

before she is in "custody pursuant to the judgment of a
State court."[9]  28 U.S.C. § 2254(a).  Because she has not
been re-sentenced, there is no state judgment in her case
and this court lacks jurisdiction over her petition.

* * *

For the forgoing reasons, the court will grant
Harris's motion to dissolve the stay of federal
proceedings and will dismiss her habeas petition without
prejudice.  An appropriate judgment will be entered.

DONE, this the 8th day of February, 2010.

                    /s/ Myron H. Thompson
                UNITED STATES DISTRICT JUDGE

_____

9.  To be clear, Harris does not argue that the State
has refused to grant, or has unreasonably delayed, her
re-sentencing hearing.  Thus, the court need not address
whether, in such circumstances, Harris could otherwise
seek a remedy in federal court.